IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMAINE L. WILSON, | ) |
| Plaintiff, | ) 8:03CV70 |
| vs. | ) MEMORANDUM AND ORDER |
| DOUGLAS COUNTY, et al., | ) |
| Defendants. | ) |

This matter is before the court on filing nos. 116 and 118, the Motions for Summary Judgment filed by the defendants, Douglas County, Nebraska, and Wexford Health Sources, Inc. ("Wexford"). The plaintiff filed this action while a prisoner at the Douglas County Correctional Center ("DCCC"), alleging deliberate indifference and substandard medical care, in violation of the Eighth Amendment to the United States Constitution. The plaintiff has since been released. Douglas County operates the DCCC and is responsible for conditions there. At all relevant times, Wexford provided medical care to inmates at DCCC pursuant to a contract between Wexford and Douglas County.[1]

---

[1] During the relevant time, Wexford served as a medical provider under contract with DCCC to treat inmates. As such, Wexford acted under color of state law for purposes of the plaintiff's claim pursuant to 42 U.S.C. § 1983. See, e.g., West v. Atkins, 487 U.S. 42, 49-56 (1988) ("state employment is generally sufficient to render the defendant a state actor"); Walker v. Horn, 385 F.3d 321, 332 (3d Cir. 2004) (physician under contract to treat inmates acted under color of state law); Burke v. North Dakota Dept. of Corrections & Rehabilitation, 294 F.3d 1043, 1044 (8th Cir. 2002) (plaintiff stated a claim for relief under § 1983 against medical-services contractor for North Dakota inmates; corporation acting under color of state law can be liable under § 1983 for its own policies if such policies are unconstitutional).

Similarly, Douglas County may be liable for unconstitutional medical care at DCCC, notwithstanding that the County contracted with Wexford, a private company, to provide medical services to inmates. If, for example, the County has a custom or policy of failing to supervise medical or other providers under contract with DCCC, the County remains

In his complaint, the plaintiff asserts that his Type I diabetes was seriously mismanaged at DCCC. He also alleges that on January 3-4, 2003, he suffered injury when Wexford medical personnel failed to treat the plaintiff's medical condition appropriately, and he experienced insulin shock. While the plaintiff was in insulin shock, he became disoriented, and corrections officials at DCCC misinterpreted the situation and beat him severely. They then punished him for his "behavior."

Some of the grounds on which the defendants move for summary judgment are denied below and do not require a response by the plaintiff. However, others do require a response, and, therefore, by a separate order, the trial and pretrial conference in this case have been rescheduled to provide the plaintiff with sufficient time to address those matters which require a response.

---

responsible for its own policies and practices if conditions drop below a constitutionally acceptable level. Hiring a private contractor to provide essential services for prisoners in the County's custody does not absolve the County of responsibility for unconstitutional prison conditions. See, e.g., West v. Atkins, 487 U.S. 42, 56 (1988):

> Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. [FN14] The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract.
>
> > [FN14]As the dissent in the Court of Appeals explained, if this were the basis for delimiting § 1983 liability, "the state will be free to contract out all services which it is constitutionally obligated to provide and leave its citizens with no means for vindication of those rights, whose protection has been delegated to 'private' actors, when they have been denied." 815 F.2d, at 998.

# I. ISSUES REQUIRING NO RESPONSE

## A. Expert Opinions Regarding "Deliberate Indifference"

Wexford relies on the expert witness report of Richard Osterholm, M.D. for the premise that the conduct of Wexford medical personnel did not amount to "deliberate indifference" to the plaintiff's health and safety. However, courts do not permit experts to invade the province of the court or jury by rendering opinions on matters such as "deliberate indifference" in Eighth Amendment cases, or "reasonableness" in Fourth Amendment cases.[2]   See, e.g., Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992) (excluding expert testimony about defendant's alleged deliberate indifference in the context of a motion for summary judgment):

> Dr. James Greenstone testified by affidavit regarding the hostage crisis and pointed out many errors that he believes [the defendant] committed .... The affidavit then asserts that [the defendant] acted with deliberate indifference and conscious disregard, as those mental states are conventionally defined.  Plaintiff cannot rely on these last assertions to create a genuine issue regarding [the defendant's] mental state....
>
> Expert witnesses may perform two roles: explaining evidence to a jury, and acting as the source of evidence for a jury .... We conclude that Dr. Greenstone's conclusory assertions regarding [the defendant's] state of mind are not admissible. As an expert in the field of hostage negotiation, Dr. Greenstone can properly offer evidence on effective methods and explain to a jury faults in the methods employed by a police force. On the other hand, Dr. Greenstone is not in a better position than a juror to conclude whether [the defendant's] actions demonstrated such a lack of concern for [the plaintiff's] safety as to constitute deliberate indifference or conscious disregard.  Opening the door to ultimate issues did not "open the door to all opinions."

---

[2] Although the testimony is presented here in the context of a motion for summary judgment, "[a]ffidavits submitted for summary judgment determinations must set forth facts 'as would be admissible in evidence.' Fed. R. Civ. P. 56(e)." Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992).

3

Id. (Citations omitted.)

Similarly, in Woods v. Lecureux, 110 F.3d 1215 (6th Cir. 1997), the Sixth Circuit affirmed the exclusion of expert testimony that conduct by a warden was "deliberately indifferent." The court reasoned that "whether a prison official acted with deliberate indifference depends on that official's state of mind. Thus, by expressing the opinion that [the official] was deliberately indifferent, [the expert] gives the false impression that he knows the answer to this inquiry, which depends on [the official's] mental state." Id. at 1221. "[T]estimony that does little more than tell the jury what result to reach" is inadmissible and is also not helpful to the trier of fact. Id. at 1220. "Testimony ... which attempts to tell the jury what result to reach and which runs the risk of interfering with a district court's jury instructions, hardly can be viewed as being helpful to the jury." Id. at 1221.

Thus, courts generally express one or more of four similar reasons why expert opinions are not admissible on an issue such as "deliberate indifference." Such testimony merely tells a jury what result to reach, expresses a legal conclusion, includes assertions regarding a defendant's state of mind, and does not aid the trier of fact to understand the evidence or determine a fact in issue.[3]

---

[3] Similarly, the Eighth Circuit has found reversible error in expert opinion testimony that police officers acted "reasonably" in a Fourth Amendment context. Peterson v. City of Plymouth, 60 F.3d 469 (8th Cir. 1995). "Over the course of his testimony, [the expert] set forth his opinion as to why each action the officers took was consistent with 'nationally accepted standards.'" Id. at 475. "[T]he only disputed issues at trial involved whether the officers actually had probable cause and whether, under qualified immunity analysis, they could reasonably believe they had probable cause. Both probable cause and qualified immunity are ultimately questions of law." Id. "[The expert's] testimony involved only his views concerning the reasonableness of the officers' conduct in light of 'Fourth Amendment standards.' To that end, his testimony was not a fact-based opinion, but a statement of

4

Dr. Osterholm's opinions, medical or otherwise, regarding whether Wexford treated the plaintiff with deliberate indifference and whether any defendant violated the plaintiff's civil rights do not constitute admissible evidence. The plaintiff need not offer expert evidence to rebut Dr. Osterholm's opinions in those two respects.

### B. Exhaustion of Administrative Remedies

42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies before a prisoner files suit in federal court about conditions or events in prison. Douglas County alleges that the plaintiff failed to submit grievances about the treatment the plaintiff received. Exhaustion of administrative remedies promotes the policy of allowing complaints to be addressed by prison administrators before a prisoner initiates a federal lawsuit. Exhaustion may prompt corrective action and thereby remove the need for litigation, may filter out frivolous suits, and may at least create an administrative record, useful in resolving the matter if litigation ensues. Porter v. Nussle, 534 U.S. 516, 525 (2002). Thus, a primary purpose of exhaustion is to ensure that the plaintiff's prison has a chance to address the plaintiff's claims before they reach federal court.

I have previously ruled that the plaintiff's inmate file is replete with complaints, kites, grievances, and disciplinary records relating to the defendants' failure to treat the plaintiff's

---

legal conclusion .... The legal conclusions were for the court to make. It was an abuse of discretion to allow the testimony." See generally United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002), *quoting* Weinstein's Federal Evidence § 704.04[2][a] (2d ed. 2001): "'The most common reason for excluding opinion testimony that gives legal conclusion is lack of helpfulness .... The testimony supplies the jury with no information other than the witness's view of how the verdict should read.' The role of the district court, therefore, is to distinguish opinion testimony that embraces an ultimate issue of fact from opinion testimony that states a legal conclusion."

diabetes appropriately, and that the record indicates that the plaintiff actively bombarded DCCC officials with a multitude of complaints, grievances, and the like about his medical treatment and the injustice of the events on January 3-4, 2003. I now address the issue of exhaustion more specifically, and for the following reasons, I deny summary judgment insofar as the motion(s) may be based on 42 U.S.C. § 1997e(a).

Two avenues exist at DCCC for allowing inmate complaints to be addressed by prison administrators before a prisoner initiates a federal lawsuit. The *Inmate Rules and Regulations Handbook* (the "Handbook"), in Chapter XI, §§ 11.1 *et seq.* informs inmates at DCCC of the institution's administrative grievance procedures. A wholly different mechanism for addressing inmate concerns arising out of events which have resulted in disciplinary penalties is found in Chapter XIII, §§ 13.1 *et seq.* Chapter XIII contains a Code of Offenses and procedures governing misconduct reports, hearings, disposition, penalties and appeals. Penalties range from verbal reprimands to lock down or even isolation.

The defendant has not submitted any applicable legal precedent or rules in the Handbook suggesting that matters addressed in the context of inmate disciplinary proceedings must also be grieved in order to meet the purposes of 42 U.S.C. § 1997e(a). On the contrary, the Handbook itself indicates that Chapter XI (administrative grievance process) and Chapter XIII (contesting disciplinary actions) are mutually exclusive. As noted in § 11.1.C. of the Handbook, "[a]ny topic may be the subject of a grievance" **other than** "inmate disciplinary actions" (and one other exception). Section 11.1.C. of the Handbook specifically refers inmates to the chapter on discipline if an inmate wishes to contest a disciplinary action taken against him or her. "Disciplinary actions may be

6

appealed under the procedure indicated in the chapter on 'Discipline' (13.5)." Id. See also § 13.5.C. ("Disciplinary Committee decisions are not grievable....").

That is precisely what the plaintiff did. Thus, the record contradicts the County's protestations that the absence of grievances rendered DCCC staff unaware of the plaintiff's concerns. On the contrary, every aspect of the occurrence is memorialized in the incident reports, medical notes, and disciplinary hearing records concerning the events of January 3-4, 2003.

## II. ISSUES REQUIRING A RESPONSE

### A. Municipal and Corporate Liability

There appears to be some confusion about the nature of the plaintiff's claim. The plaintiff has named no individual defendants, just a state governmental subdivision and a private corporation. As discussed below, neither defendant can be held liable to the plaintiff under 42 U.S.C. § 1983 on the basis of respondeat superior.

The plaintiff states that he entered DCCC on January 3, 2003 to serve a 90-day sentence for traffic offenses. He had been an insulin-dependent diabetic for 30 years with a history of highly fluctuating blood sugars. The night of his arrival at DCCC, he received an insulin shot but, despite his request, the nurse who administered the insulin shot refused to provide the snack which the plaintiff states customarily accompanies an insulin injection to prevent a severe drop in blood sugar. Later in the night and following early morning, DCCC corrections officers found the plaintiff wandering around incoherently. The plaintiff alleges that the officers jumped him, physically injured him, used excessive force,

and punished him with placement in lock down for kicking an officer in the course of the altercation.

The allegations of excessive force constitute only one aspect of the plaintiff's claim. The complaint alleges that those who manage the DCCC have a policy or custom of failing to supervise and train the corrections officers who work there and of allowing the kinds of physical abuse of prisoners experienced by the plaintiff. The plaintiff alleges failures by Wexford and Douglas County to train employees appropriately to handle medical emergencies of the kind suffered by the plaintiff and to provide adequate treatment for inmates, such as the plaintiff, who have a serious diabetic condition.

There can be no imputed or vicarious liability premised on 42 U.S.C. § 1983. A municipal or corporate entity may not be held liable on principles of respondeat superior for constitutional injuries allegedly inflicted by other persons. See, e.g., Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001), *citing* Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 405 (1997) and City of Canton v. Harris, 489 U.S. 378, 385 (1989).

"A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a "custom or usage" with the force of law.'" Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003).[4]  See also Turney v. Waterbury, 375 F.3d 756, 761-62 (8th

---

[4] Liability can attach "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003).  "Official policy involves 'a deliberate choice to follow a course of action * * * made

Cir. 2004) (citation omitted):  "'In a section 1983 action, a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality.'... A failure to properly train employees is one way in which an entity can exhibit deliberate indifference toward the rights of others."  In such circumstances, to defeat a motion for summary judgment, the plaintiff must demonstrate a factual issue "that the training provided to ... County officials was inadequate, or that its current policies evinced a disregard for the constitutional rights of its jail inmates."  Id. at 762.

Similarly, Wexford cannot be held liable to the plaintiff under § 1983 on the basis of respondeat superior or vicarious liability.  See, e.g., Burke v. N.D. Dep't of Corr. & Rehab., 294 F.3d 1043, 1044 (8th Cir. 2002) (*per curiam*) (corporation acting under color of state law may be liable only if a policy, custom, or action by those who represent official policy inflicts an injury actionable under § 1983).  See also Sanders v. Sears, Roebuck & Co., 984 F.2d 972 (8th Cir. 1993) (there is no corporate liability based on respondeat superior under § 1983).  Even if a corporation is acting under color of state law, it "will only

---

from among various alternatives' by an official who [is determined by state law to have] the final authority to establish governmental policy." Alternatively, "custom or usage" is demonstrated by:

    (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

    (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

    (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

Id. at 603-04.

be held liable under § 1983 for its own unconstitutional policies .... The proper test is whether there is a policy, custom[,] or action by those who represent official policy that inflicts injury actionable under § 1983."  Id. at 975-76 (citation omitted).

Therefore, to establish the existence of a factual issue on which to proceed to trial against Wexford, the plaintiff will have to demonstrate at least a material factual issue that he suffered a constitutional injury attributable to a Wexford policy or custom, or to an action by those representing Wexford's official policy.  Similarly, to avoid summary judgment in favor of Douglas County, the plaintiff must show at least a material factual issue that a County policy or custom constituted the moving force behind a constitutional injury inflicted on the plaintiff.

### B. Negligence

To defeat the motion for summary judgment of either defendant, the plaintiff must also establish a genuine issue of material fact on which a jury could find more than negligence by that defendant.  "Prison doctors and guards violate the Eighth Amendment when they act with 'deliberate indifference to [an inmate's] serious medical needs.'" Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004).  A "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."... However, "medical treatment may so deviate from the applicable standard of care as to evidence ... deliberate indifference."  Pool v. Sebastian County, 418 F.3d 934, 942 (8th Cir. 2005) (citations omitted).  "'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference.'" Bender v. Regier, 385 F.3d at1137, *citing* Farmer v. Brennan, 511 U.S. 825, 837 (1994).

When a claim arises out of the use of force against an inmate, it is the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment in violation of the Eighth Amendment. See, e.g., Hudson v. McMillian, 503 U.S. 1 (1992):

> In Whitley v. Albers, 475 U.S. 312 ... (1986), the principal question before us was what legal standard should govern the Eighth Amendment claim of an inmate shot by a guard during a prison riot. We based our answer on the settled rule that "'the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Id., at 319 ... (quoting Ingraham v. Wright, 430 U.S. 651, 670 ... (1977)) ....
>
> What is necessary to establish an "unnecessary and wanton infliction of pain," we said, varies according to the nature of the alleged constitutional violation. 475 U.S., at 320.... For example, the appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited "deliberate indifference." See Estelle v. Gamble, 429 U.S. 97 ... (1976). This standard is appropriate because the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns. Whitley, supra, 475 U.S., at 320 ....
>
> We accordingly concluded in Whitley that application of the deliberate indifference standard is inappropriate when authorities use force to put down a prison disturbance. Instead, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"

Id. at 5-6.

> In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. See Whitley, supra, 475 U.S., at 327.... This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some

11

arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today.

Id. at 8-9.

THEREFORE, IT IS ORDERED:

1. That, insofar as filing nos. 116 and 118, the defendants' Motions for Summary Judgment, are premised upon the opinions expressed by Wexford's defense expert, Dr. Richard Osterholm, that Wexford personnel did not treat the plaintiff with deliberate indifference or violate the plaintiff's civil rights, such opinions do not constitute admissible evidence, and summary judgment on that basis is denied;

2. That, insofar as filing nos. 116 and 118 are premised upon 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act, summary judgment on that basis is denied;

3. That in all other respects, filing nos. 116 and 118 are taken under advisement until after December 5, 2005;

4. That the plaintiff shall file a response to filing nos. 116 and 118 by no later than December 5, 2005; and

5. That in addition to any other matters the plaintiff may choose to discuss in his response, the plaintiff shall demonstrate, with references to the record, that there exist material issues of fact regarding county and corporate liability and deliberate indifference on which to proceed to trial.

DATED this 10th day of November, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge