IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMAINE WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | 8:03cv70 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| DOUGLAS COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on filing nos. 116 and 118, the Motions for Summary Judgment filed by the defendants, Douglas County, Nebraska, and Wexford Health Sources, Inc. ("Wexford").   I find that genuine issues of material fact preclude the entry of summary judgment for either defendant except as to the limited issues discussed below.

As I have stated in previous orders, both defendants can be liable to the plaintiff for unconstitutionally deficient medical care provided to the plaintiff while he was a prisoner at the Douglas County Correctional Center ("DCCC").  During the relevant time, Wexford served as a medical provider under contract with Douglas County to treat inmates at DCCC.  As such, Wexford acted under color of state law for purposes of the plaintiff's claim pursuant to 42 U.S.C. § 1983. Similarly, Douglas County cannot escape liability for unconstitutional medical care at DCCC, notwithstanding that the County contracted with Wexford, a private company, to perform a public function for inmates in the County's care.

However, as I have repeatedly explained in this case, neither defendant can be liable to the plaintiff based merely on principles of vicarious liability or respondeat superior for constitutional injuries allegedly inflicted by their employees or other persons.  See, e.g., Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694, (1978); Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001), citing Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 405 (1997) and City of Canton v. Harris, 489 U.S. 378, 385 (1989).  Therefore, if, for example, DCCC corrections officials used excessive force in subduing the plaintiff while the plaintiff suffered disorientation from insulin shock on January 3-4, 2003, Douglas County cannot be held vicariously liable merely because of that use of force by the County's employees.

## Excessive Force

The plaintiff did not allege a claim of excessive force in his complaint, and he did not name any individuals as defendants who allegedly violated the United States Constitution by using excessive force against the plaintiff in the altercation which occurred on January 3-4, 2003.  In addition, the plaintiff has not identified any ordinance, regulation, official

1

policy, informal policy, custom or usage of either defendant which promoted, encouraged, enabled, fostered, or otherwise directly caused a use of excessive force against the plaintiff. Similarly, the plaintiff has failed to demonstrate that any either defendant "was on actual or constructive notice that its omission would likely result in a [use of excessive force]."[1]

When reviewing the record in connection with a motion for summary judgment, the court may not weigh the evidence, determine credibility, or decide the truth of any factual matter in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Tatum v. City of Berkeley, 408 F.3d 543, 549 (8th Cir. 2005). Nevertheless, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. The plaintiff has presented no evidence on which a jury could find that a policy or custom of either defendant constituted the moving force behind a violation of the Eighth Amendment by the use of excessive force inflicted on the plaintiff.

## Administrative Confinement

The placement of the plaintiff in administrative confinement, i.e., segregation, while possibly objectionable and inequitable in the circumstances, did not violate either the Due Process Clause of the Fourteenth Amendment or the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution. Therefore, insofar as the plaintiff alleges a separate claim for relief based on his confinement in segregation, partial summary judgment is granted for the defendants, dismissing any such claim.

Due Process

The plaintiff did not have a liberty interest in remaining free from administrative segregation as a prisoner at DCCC. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005). Thus, claims regarding the right to either procedural or substantive due process must begin with identification of a protected liberty or property interest. Singleton v. Cecil, 176 F.3d 419, 424-25, 425 n. 7 (8th Cir.) (*en banc*),

---

[1]See, e.g., Gibson v. County of Washoe, 290 F.3d 1175, 1186-87 (9th Cir. 2002): "[A] plaintiff can allege that through its omissions [a] municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional .... However, because Monell [v. New York City Dept. of Social Services, 436 U.S. 658, 694, (1978),] held that a municipality may not be held liable under a theory of respondeat superior, a plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation .... To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." The plaintiff has made no such showing with regard to the use of excessive force.

cert. denied, 120 S.Ct. 402 (1999).  A protected liberty interest may arise from either the Due Process Clause of the United States Constitution, itself, or from a state-created statutory entitlement.  Hewitt v. Helms, 459 U.S. 460, 466 (1983); Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (citations omitted).

The Due Process Clause of its own force does not afford a prisoner a liberty interest in remaining in the general prison population.  Lekas v. Briley 405 F.3d 602, 607 (7th Cir. 2005).  See also Holly v. Woolfolk, 415 F.3d 678,  2005 WL 1661528 at *1 (7th Cir. 2005) ("being placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process").  Accord Christianson v. Clarke, 932 F. Supp. 1178, 1182 (D. Neb. 1996) ("[T]he Due Process Clause itself does not protect any liberty interest in remaining free from administrative segregation or protective custody.").

An inmate's claim to a state-created liberty interest is governed by the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995).  "Sandin found no liberty interest protecting against a 30-day assignment to segregated confinement because [the assignment] did not 'present a dramatic departure from the basic conditions of [the inmate's] sentence.'"  Wilkinson v. Austin, 125 S.Ct. 2384, 2394 (2005), quoting Sandin, 515 U.S. at 485.   To demonstrate a liberty interest created by state law, the plaintiff must show that the protested conditions exceed the normal range and limits of custody and impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 483-84.

In Nebraska, deprivation of good-time credit implicates a liberty interest sufficient to require due process.  Dailey v. Nebraska Dept. of Corr. Servs., 578 N.W.2d 869, 873 (1998).  See generally Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974).  However, absent periods of extraordinary duration in segregation, the Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin."  Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002).   Accord Kennedy v. Blankenship, 100 F.3d 640, 642 n.2, 643 (8th Cir.1996) (placement in punitive isolation was not an atypical and significant deprivation even though the prisoner faced restrictions in privileges regarding mail, telephone, visitation, commissary, and personal possessions). See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003): "We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship."  The absence of contact visitation, exercise privileges, and chapel rights for 37 days did not constitute an atypical and significant hardship.  Id.

Cruel and Unusual Punishment

Regarding the placement of the plaintiff in administrative confinement, the Eighth Amendment is violated by the denial of "the minimal civilized measure of life's necessities," or by incarceration under conditions "posing a substantial risk of serious harm."  Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (citation and internal quotation marks omitted). It is the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment forbidden by the Eighth Amendment.  Hope v. Pelzer, 122 S.Ct. 2508, 2514

(2002); <u>Phillips v. Norris</u>, 320 F.3d 844, 848 (8th Cir. 2003).

In evaluating the constitutionality of challenged prison conditions under Eighth Amendment standards, the duration of harsh or restrictive conditions constitutes an important factor. See, e.g., <u>Rahman X v. Morgan</u>, 300 F.3d 970, 974 (8th Cir. 2002). The short duration of the plaintiff's segregated confinement was neither "cruel" nor "unusual" in the sense of unnecessary and wanton infliction of pain.

## Summary

This case will proceed to trial against both defendants on the issues related to the plaintiff's medical care while at DCCC. On the other hand, partial summary judgment is granted dismissing the plaintiff's claims founded on allegations of excessive force and on the decision(s) to place the plaintiff (and keep him) in administrative confinement. This order does not preclude background evidence at trial regarding the use of force[2] and the placement of the plaintiff in lockdown. However, no independent claims for relief based on excessive force and administrative lockdown will be submitted to the jury

THEREFORE, IT IS ORDERED:

1.     That filing nos. 116 and 118, the defendants' Motions for Summary Judgment, are granted in part and denied in part;

2.     That partial summary judgment is granted dismissing the plaintiff's claims for relief based on excessive force and placement in administrative confinement; and

3.     That in all other respects, filing nos. 116 and 118 are denied.

DATED this 4th day of January, 2006.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge

---

[2]The physical injuries sustained by the plaintiff in the altercation on January 3-4, 2003 can also serve to satisfy the precondition for recovery of damages for emotional distress under 42 U.S.C. § 1997e(e) ("Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").