IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMAINE WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | 8:03cv70 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| DOUGLAS COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on filing nos. 156 and 158, the Motions for Reconsideration filed by the defendants, Douglas County, Nebraska, and Wexford Health Sources, Inc. ("Wexford"). The defendants seek reconsideration and clarification of filing no. 154, the court's Memorandum and Order of January 4, 2006, insofar as the court denied the defendants' Motions for Summary Judgment in part.

The plaintiff filed this action while a prisoner at the Douglas County Correctional Center ("DCCC"), alleging deliberate indifference and substandard medical care, in violation of the Eighth Amendment to the United States Constitution. In filing no. 154, I held that this case will proceed to trial against both defendants on the issues related to the plaintiff's medical care while at DCCC. On the other hand, I granted partial summary judgment dismissing any independent claims founded on allegations of excessive force and on the decision(s) to place the plaintiff (and keep him) in administrative confinement.

Both defendants question whether the plaintiff has demonstrated a material factual issue that a County or Wexford policy or custom constituted the moving force behind a constitutional injury inflicted on the plaintiff. However, I conclude, as I did in filing no. 154, that the plaintiff has identified triable issues concerning policies and customs exhibiting deliberate indifference to the plaintiff's medical condition which could have proximately caused injury to the plaintiff.

As examples, and without limitation, I note that as to both Wexford and the County, the plaintiff points to policies or customs contributing to gross mismanagement of the plaintiff's insulin-dependent diabetes. According to the plaintiff, Wexford and DCCC policies or customary practices and procedures included repeated failures to provide the plaintiff with food after insulin injections, frequently delayed meals and snacks, sporadic medical monitoring, delayed insulin shots, virtually nonexistent evaluation of the plaintiff in the chronic care clinic, lack of attention to inmate medical history from the plaintiff's prior stay at DCCC and a policy not to order medical records from treating physicians outside the institution. In addition, the plaintiff points to recklessly deficient record-keeping regarding physician orders, which may have caused vital information about the plaintiff's

1

condition to be unavailable to corrections staff on January 3-4, 2003, when the plaintiff was discovered wandering around DCCC disoriented and, as unrecognized by corrections staff, in insulin shock. As to Douglas County in particular, again without limitation, the record contains no evidence that DCCC staff receive any training whatsoever regarding medical symptoms, even those as likely to be encountered as the symptoms of insulin shock or heart attack. Such lack of training could have proximately led corrections officers to misinterpret the situation on January 3-4, 2003, when, instead of obtaining medical assistance for the plaintiff, they severely beat the plaintiff and relegated him to lockdown. In addition, DCCC has a policy precluding corrections staff from contacting medical staff directly, even for assistance in an emergency. Whether that policy contributed to the debacle on January 3-4, 2003 is a matter to be considered at trial.

The defendants' Motions for Reconsideration do not raise facts or legal arguments which would cause me to reconsider the previous Memorandum and Order entered in this matter. Therefore, filing nos. 156 and 158 are denied.

SO ORDERED.

DATED this 10th day of January, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge